**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID A. SYLVESTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 01899 |
| v. | ) | |
| | ) | |
| WINTRUST FINANCIAL | ) | Judge John J. Tharp, Jr. |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This is an action for violations of the Fair Labor Standard Act ("FLSA") requirements that employers pay minimum wage and overtime to non-exempt employees who work more than 40 hours in a workweek. The plaintiffs are or were employed as loan originators by Wintrust Financial Corporation, Barrington Bank & Trust Company, N.A., and Wintrust Mortgage Corporation. They allege that the defendants improperly classified all of their loan originator employees as exempt from FLSA requirements based on the "outside sales" exemption, failed to pay them a minimum wage and overtime when they worked more than 40 hours in a workweek, and failed to maintain FLSA-mandated records.

Pending before the Court are three motions. The plaintiffs move to conditionally certify their lawsuit as a collective action on the grounds that all of Wintrust's loan originators are or were similarly situated and subjected to the same unlawful policy, and seek authorization to issue notice to prospective class members. They also move to extend the FLSA tolling period. The defendants move to dismiss or stay the action as to two plaintiffs pending arbitration. For the reasons stated below, the Court grants the plaintiffs' motion for conditional certification and

court-authorized notice, grants the defendants' motion to stay pending arbitration, and continues the plaintiffs' motion to extend the tolling of the statute of limitations pending further briefing.

## BACKGROUND

The named plaintiff, David Sylvester, worked from March 17, 2009 until January 17, 2011, as a home mortgage loan originator for Wintrust Mortgage, which originated and purchased residential mortgages for sale into the secondary market. Sylvester's work required him to communicate with potential customers, collect and input customers' information into loan applications, and forward applications to underwriters for loan approval decisions. First Am. Compl., Dkt. 23, ¶¶ 8, 11–12. According to Sylvester, loan originators, who were compensated mainly by commission, primarily conducted their work in business or home offices. *Id.* ¶¶ 11, 15.

Wintrust Mortgage merged into and now operates as a division of Barrington Bank, a wholly-owned subsidiary of Wintrust Financial Corporation. *See* Dkt. 38 at 1 & n.1. On March 15, 2012, Sylvester filed suit against all three entities (henceforth collectively referred to as "Wintrust"), to recover unpaid overtime and minimum wages under the FLSA, 29 U.S.C. §§ 206–207. Sylvester alleges that because he and similarly situated loan originators were misclassified as exempt from the FLSA minimum wage and overtime requirements, they worked hours for which they did not receive the minimum wage and regularly worked in excess of forty hours per week without overtime pay. First Am. Compl., Dkt. 23, *Id.* ¶¶ 16–17, 27; Pls.' Mot., Dkt. 38, at 2. Additionally, he alleges that Wintrust did not require loan originators to track their time worked and failed to maintain accurate time records. *Id.* ¶ 18.

Prior to January 2012, most Wintrust loan originators were paid on a commission-only basis. Defs.' Resp., Dkt. 67, at 3. Both parties note that in late 2011, Wintrust surveyed its loan

originators about how their work was conducted. Pls.' Mot., Dkt. 38, at 10; Defs.' Resp., Dkt.

67, at 3–4. Following the survey, Wintrust reclassified its loan originators into one of three

categories: "Outside Residential Loan Originators," "Inside Retail Loan Originators," or "Inside

Senior Loan Originators." Defs.' Resp., Dkt. 67, at 3–4. Those in the first category are required

to perform most of their work outside the office and are paid on a commission-only basis. *Id.* at

4. Those in the latter two categories must now track their hours: Inside Retail Loan Originators

are guaranteed a minimum wage for forty hours a week and overtime with prior approval, and

Inside Senior Loan Originators are guaranteed fifty hours a week. *Id.* at 4–5. In or around

January 2012, Wintrust's loan originators signed new employment contracts to reflect their

newly assigned classification; these contracts also included provisions requiring loan originators

to submit any employment-related disputes to binding arbitration. *Id.*

Wintrust's 2012 reclassification appears to have been the catalyst for this lawsuit.

Following the reclassification, Sylvester filed suit, and five additional people have signed forms

indicating their consent to join in a collective action as plaintiffs: Philip J. Benz, Thomas J.

Heniff, Patrick J. McCormick, Martin Quinn, and John J. Furlong. *See* Dkts. 5, 37, 45, 71. They

together seek to proceed as a collective action under 29 U.S.C. § 216(b), which would enable

additional loan originators to "opt in" to this suit as plaintiffs. They seek an order instructing the

defendants to give the plaintiffs a list of those employees and their contact information and

authorization to send notice of this action to "all current and former loan originators employed

by Wintrust within the past three years." Pls.' Mot., Dkt. 38, at 15. Citing the two- or three-year

statute of limitations for FLSA actions, they also request that the Court extend the tolling of the

statute of limitations for potential class members who have yet to opt in. Pls.' Mot., Dkt. 76. In

addition to opposing the plaintiffs' motions, Wintrust moves to dismiss or stay the case as to

McCormick and Heniff pursuant to the arbitration clauses in their employment agreements. Defs.' Mot., Dkt. 46, at 2.

## DISCUSSION

FLSA requires that employers "pay overtime to employees working on an hourly basis." *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 369 (7th Cir. 2005); 29 U.S.C. § 207(a)(1) (requiring one and a half times one's regular wage for every hour worked beyond forty in a week). It also requires that employees who are "engaged in commerce or in the production of goods for commerce" be paid a statutory minimum wage. 29 U.S.C. § 206(a). Alleging that Wintrust willfully failed to meet these requirements, the plaintiffs seek to expand the reach of this suit by having the Court conditionally certify a collective action, authorize notice to possible class members, and extend the FLSA tolling period. The defendants maintain that their loan originators were "outside salesmen" and therefore exempt from the FLSA minimum wage and overtime requirements. *See* 29 U.S.C. § 213(a)(1) (authorizing Secretary of Labor to "define and delimit" the outside sales and other §213 exemptions); 29 C.F.R. §§ 541.500–.502 (defining the limits of the outside sales exemption). The defendants request that the Court dismiss or stay the case pending arbitration as to two individuals who have already consented to join the case as plaintiffs.

I.      **Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice**

FLSA permits plaintiffs to bring a collective action to recover unpaid overtime compensation and minimum wages on behalf of themselves "and other employees similarly situated." 29 U.S.C. § 216(b). Additional would-be plaintiffs to FLSA collective actions must opt in to the lawsuit if the court conditionally certifies a class. *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). Neither Congress nor the Seventh Circuit has set forth criteria for

deciding conditional certification and notice issues, but district courts have "wide discretion" to manage collective actions. *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 991 (N.D. Ill. 2010) (citing *Alvarez*, 605 F.3d at 448). Courts in this district have settled on a two-step process for conditional certification. *See Rottman*, 735 F. Supp. 2d at 990–91 (citing *Hundt v. DirectSat USA, LLC*, No. 08 C 7238, 2010 WL 2079585, at *2 (N.D. Ill. May 24, 2010)).

First, the plaintiffs have the burden of showing that there are other similarly situated employees who are potential claimants. *Rottman*, 735 F. Supp. 2d at 991; *Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008). To do this, the plaintiffs "need only make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Rottman*, 735 F. Supp. 2d at 991 (quoting *Smallwood v. Illinois Bell Telephone Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill.2010)). Courts interpret the "similarly situated" requirement "leniently." *Anyere v. Wells Fargo, Co., Inc.*, No. 09 C 2769, 2010 WL 1542180, at *2 (N.D. Ill. April 10, 2010); *see also Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008). If the plaintiffs are able to make a modest factual showing that other potential plaintiffs are similarly situated, the court may conditionally certify the case as a collective action and allow the plaintiffs to send notice of the case to the similarly situated employees who may then opt in as plaintiffs. *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007).

The second, more stringent, step of the collective action certification process follows the completion of the opt-in process and discovery. "Once it is known which employees will be part of the class, the Court must reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Jirak*, 566 F. Supp. 2d at 848 (quotation marks and citation omitted).

If the court finds insufficient similarities during the second step, it may revoke conditional certification or divide the class into subclasses. *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 751 (N.D. Ill. 2011); *Russell*, 575 F. Supp. 2d at 933.

## A. Plaintiffs' Showing that the Loan Originators Were Similarly Situated and Subject to a Common Policy or Practice that Violates the Law

This case is currently at the first step. The plaintiffs claim that they have satisfied their burden for conditional certification. Wintrust argues not only that the plaintiffs have failed to meet their burden but also that the Court should apply an "intermediate" level of scrutiny in its analysis. Some courts have employed a heightened standard to motions for conditional certification where parties had completed significant discovery. *See, e.g.*, *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 439 (S.D. Ind. 2012) (applying intermediate scrutiny where "substantial discovery" had taken place); *Bunyan v. Spectrum Brands, Inc.*, 07-CV-0089-MJR, 2008 WL 2959932, at *4 (S.D. Ill. July 31, 2008) (adopting an "intermediate approach" where substantial discovery had taken place); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000) (raising standard where more than one hundred plaintiffs had opted in and discovery was complete). Here, the Court finds that such an approach has little to recommend it given the conditional nature of this motion and the fact that the parties have not completed discovery. *See Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007) (declining to skip the first step where parties did not yet have all the information that would be available to them once they knew who would opt in to the case); *see also Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1167 (D. Kan. 2006) ("[T]he court cannot conclude that the evidence is representative of what plaintiffs would present given further discovery.").

The Court will therefore apply the ordinary first-step standard to this motion, which requires a "modest factual showing" to support that members of the proposed class were or are similarly situated and subjected to a common policy that violates the law. Although the first-step inquiry is "undemanding," the Court is not obligated, as it would be on a motion to dismiss, to accept the plaintiff's allegations as true. *Rottman*, 735 F. Supp. 2d at 990 (quoting *Hundt*, 2010 WL 2079585, at *2). Instead, the Court "evaluates the record before it, including the defendant's oppositional affidavits, to determine whether the plaintiffs are similarly situated to other putative class members." The plaintiffs need only overcome such contrary evidence with their own showing. *See Molina*, 566 F. Supp. 2d at 786.

To show that members of the proposed class are similarly situated, the plaintiffs have submitted numerous exhibits to support that they shared the same job duties and were uniformly classified as exempt from the relevant FLSA requirements. A Wintrust corporate representative stated that the job duties of loan originators were "the same." Pls.' Ex. 1, Dkt. 38-1, at 205–06. They were to "sell mortgage loan products," which, according to numerous Wintrust employees, required them to use Wintrust's software to enter information into loan applications. *See, e.g.*, Defs.' Resp., Dkt. 67, at 2; Pls.' Ex. 4, Dkt. 38-4, ¶¶ 20–21; Pls.' Ex. 5, Dkt. 38-5, ¶ 16. The software, "essential" for a loan originator's work, generally requires an office-type environment for its use, and therefore several Wintrust employees report that loan originators primarily work in an office setting, whether at a Wintrust location or at home. *See, e.g.*, Pls.' Ex. 1, Dkt. 38-1, at 112, 123; Pls.' Ex. 4, Dkt. 38-4, ¶ 20; Pls.' Ex. 7, Dkt. 38-7, ¶ 6. Multiple loan originators and a Wintrust manager confirm that loan originators routinely worked in excess of forty hours per week. *See, e.g.*, Pls.' Ex. 4, Dkt. 38-4, ¶¶ 14–15; Pls.' Ex. 5, Dkt. 38-5, ¶¶ 10–11. The plaintiffs

estimate that the class would potentially include approximately seven hundred people employed as Wintrust loan originators since 2009. *See* Pls.' Mot., Dkt. 38, at 4.

Wintrust argues that to prove that the members of the putative class are similarly situated will involve an inquiry that is too highly individualized to warrant class treatment, but at this step in the process, "[p]laintiffs do not have to show that the potential class members have identical positions for conditional certification to be granted." *Jirak*, 566 F. Supp. 2d at 848–49. It is only at step two that the Court considers "whether the plaintiffs share similar or disparate employment settings." *Id.* at 848 (citing *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004)). It may be, as Wintrust asserts, that every loan originator had "their own way of doing business" and that one or more Wintrust managers encouraged loan originators to stay out of the office. *See* Defs.' Ex. F, Dkt. 67-6, at 63, 66. But this showing is not enough, in light of the record before the Court, to establish that the plaintiffs have failed to show that the members of the putative class are similarly situated. *See Perry v. Nat'l City Mortgage, Inc.*, 05-CV-891 DRH, 2007 WL 1810472, at *3 (S.D. Ill. June 21, 2007) (conditionally certifying a class even though defendants offered evidence that loan originators' day-to-day practices varied). For this initial step of the conditional certification process, they show that the members of the putative class were similarly situated enough to warrant notice.

To show that the defendants subjected the proposed class to a common policy of misclassifying them as exempt in violation of the FLSA, the plaintiffs have submitted evidence, including the deposition of a Wintrust corporate representative, that prior to 2012, Wintrust loan originators were uniformly classified as exempt from FLSA minimum wage and overtime requirements. *See* Pls.' Ex. 1, Dkt. 38-1, at 203; Pls.' Ex. 4, Dkt. 38-4, ¶¶ 9–10. Some loan originators continue to be. Defs.' Resp., Dkt. 67, at 4–5. The exemption Wintrust relies on, the

"outside sales" exemption, applies to employees whose primary duties are to make sales and who are "customarily and regularly engaged away from the employer's place or places of business." *See* 29 C.F.R. § 541.500. To show that loan originators were misclassified, they offer declarations and screenshots of Wintrust documentation and software that show loan originators need to be logged into Wintrust's software to discuss loans or input information into loan applications. *See, e.g.*, Pls.' Ex. 1, Dkt. 38-1, at 130; Pls.' Ex. 9, Dkt. 38-9; Pls.' Ex. 10, Dkt. 38-10. They also offer evidence that in part as a result of their constant need for automated tools, loan originators spend the majority of their time working in Wintrust bank offices or home offices. *See, e.g.*, Pls.' Ex. 4, Dkt. 38-4, ¶¶ 20–21.

Wintrust primarily relies on a legal argument to oppose the plaintiffs' showing. Wintrust's position is that because classifying loan originators as exempt is not *per se* illegal, the plaintiffs have failed to meet their burden because the Court would need to conduct individualized analysis in order to determine the exemption's applicability. But again, it is only at step two that the Court considers "whether affirmative defenses raised by the defendant would have to be individually applied to each plaintiff." *Jirak*, 566 F. Supp. 2d at 848 (citing *Mielke*, 313 F. Supp. 2d at 762). "The employer bears the burden to establish that an exemption from the FLSA applies." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 173 (7th Cir. 2011) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974)). It would therefore be inappropriate for the Court to require, in this early motion for conditional certification, that the plaintiffs definitively prove that Wintrust misapplied the exemption. While Wintrust also cites evidence that indicates Sylvester spent at least some of his time working outside an office setting, *see* Defs.' Ex. D, Dkt. 67-1, at 104–05, 132, this showing is defeated for the purposes of this motion by the plaintiffs' evidence indicating that loan originators primarily worked in offices.

9

Furthermore, the Court does not agree with Wintrust that determining whether the exemption rightly applies will necessarily require individualized determinations. It is just as possible that the exemption determination can be made categorically for subgroups of those plaintiffs who eventually opt in. *See Molina*, 566 F. Supp. 2d at 786 (noting that subclasses or separate lawsuits can be utilized in later stages of litigation). In fact, Wintrust identifies one potential source of information regarding potential subgroups by citing its own survey of its loan originators' work conditions. *See, e.g.*, Defs.' Resp, Dkt. 67, at 16. For the purposes of conditional certification, the plaintiffs adequately show that by being universally classified as exempt while working under conditions not aligned with the requirements of the exemption, members of the proposed class were subject to a common illegal policy.

Wintrust also argues that the proposed collective definition is unfair.[1] The plaintiffs propose that the class scope should encompass "[a]ll current and former retail mortgage loan originators employed by Wintrust and/or its affiliates/subsidiaries/predecessors within the previous three years that were not paid overtime or a guaranteed minimum wage for all hours worked." Pls.' Mot., Dkt. 38, at 10. Wintrust argues that including "and/or its affiliates/subsidiaries/predecessors" is overbroad because these entities are unidentified and the suit should not extend to any entities beyond the three defendants already party to the case. The plaintiffs have not identified information that implicates entities other than the defendants or a reason to retain the "affiliates/subsidiaries/predecessors" language, so on this point the Court agrees with Wintrust; the class will not extend beyond the three parties identified as defendants.

---

[1] *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013). Unlike many cases asserting collective actions under § 216 of the FLSA, this case does not include parallel class action claims, so the putative group of plaintiffs here can only appropriately be referred to as a "collective."

If the evidence produced at the second step warrants, the collective can be narrowed to include only certain loan originators if all are not similarly situated. Wintrust will have an opportunity to move to decertify if post-notice discovery reveals that no common policy existed that violates the law. The plaintiffs have otherwise met their burden to satisfy step one, therefore their motion for conditional certification is granted.

### B. Applicable Statute of Limitations

The parties disagree whether a two-year or three-year statute of limitations applies here. FLSA claims are generally subject to a two-year statute of limitations, but the period is extended to three years for "cause[s] of action arising out of a willful violation." 29 U.S.C. § 255(a). A FLSA violation is "willful" if the defendant either knows he is committing or is reckless about whether he is committing a violation. *EEOC v. Madison Cmty. Unit Sch. Dist. No. 12*, 818 F.2d 577, 585 (7th Cir. 1987). The plaintiffs here allege a willful violation, without stating facts that show that Wintrust's violations were knowing or reckless. Courts have held that a conclusory willfulness allegation is sufficient to justify providing notice to the putative class on the basis of the potentially applicable three-year period. *See Rosario v. Valentine Ave. Discount Store, Co., Inc.*, 828 F. Supp. 2d 508, 519 (E.D.N.Y. 2011) (explaining that statute of limitations issues can be addressed after notice and discovery); *Gambrell v. Weber Carpet, Inc.*, No. 10-2131, 2010 WL 5288173, *2 (D. Kan. Dec. 17, 2010) (approving notice on basis of three-year statute of limitations where plaintiff made only conclusory allegation of willfulness); *North v. Bd. of Trustees of Ill. State Univ.*, 676 F. Supp. 2d 690, 696 n.8 (C.D. Ill. 2009) (where plaintiff alleges willfulness, "the three year statute of limitations can be assumed to apply until the Court determines whether the violation was 'willful'"). In line with these cases, notice should be sent to all potential class members who may have valid claims if Wintrust acted willfully. This ruling

should not be interpreted as a finding that Wintrust in fact did act willfully, or that a three-year statute of limitations will govern the case; those determinations will be made after notice and discovery.

### C. Plaintiffs' Request for Employee Information

In light of the relevant period for notice being set and conditional certification being granted, the Court also grants the plaintiffs' request for an order instructing the defendants to produce certain employee information to facilitate notice. In accordance with the above definition of the collective, the defendants should produce the names, unique employee ID numbers, addresses, and telephone numbers of all potential opt-in class members to the plaintiffs' counsel. The defendants should produce this information within 14 days of the issuance of this ruling, by October 15, 2013.

### D. Plaintiffs' Proposed Notice

Wintrust objects to the plaintiffs' proposed notice and suggests that the Court approve its own version instead. *See* Defs.' Ex. G, Dkt. 67-1; Pls.' Ex. 22, Dkt. 38-22. "Absent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice." *Kelly v. Bank of Am., N.A.*, 10 C 5332, 2011 WL 7718421 (N.D. Ill. Sept. 23, 2011) (quoting *King v. ITT Continental Baking Co.*, No. 84 C 3410, 1986 WL 2628, at *3 (N.D. Ill. Feb. 18, 1986) (Rovner, J.)). "The Court has both the power and the duty to ensure that the notice is fair and accurate, [but] that power should not be used to alter plaintiffs' proposed notice unless such alteration is necessary." *Heitmann v. City of Chicago*, 04 C 3304, 2004 WL 1718420, at *3 (N.D. Ill. July 30, 2004) (quoting *King*, 1986 WL 2628, at *3).

Wintrust's proposed notice differs from the plaintiffs' in several respects, including specifying a period for notice and opt in of 45 instead of 90 days, removal of the plaintiffs'

counsels' name and contact information under the heading "Who will represent me if I join this lawsuit?," and removal of information regarding what will happen if people opt not to join the lawsuit. While these changes may have a slight effect on the reader of the notice, the "only thing that matters to the Court is that the notice of lawsuit and consent form convey accurately and fairly all the necessary information at this stage." *Heitmann*, 2004 WL 1718420, at *3. Wintrust has not identified any aspect of the plaintiffs' notice that portrays inaccurate or unfair information about this case. With the reminder that the class should be limited to those individuals employed by the three defendants in this case in accordance with the scope of the conditionally certified collective, the Court approves the plaintiffs' proposed notice. The plaintiffs are instructed to submit a final version to the Court within 14 days of the issuance of this ruling, by October 15, 2013.

## II.  Defendants' Motion to Dismiss or Stay Pending Arbitration

Of the six people that have thus far filed written consent to join this suit as plaintiffs, Wintrust argues that the claims of two should be dismissed pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1–16. The FAA reflects a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (citations omitted). "[W]hen a contract contains an arbitration clause, a strong presumption in favor of arbitration exists and courts have no choice but to order arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *CK Witco Corp. v. Paper Allied Indus.*, 272 F.3d 419, 421–22 (7th Cir.2001) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). Courts must enforce valid arbitration clauses, *see* 9 U.S.C. § 4, and the burden of proving that Congress intended to preclude arbitration of any

statutory claims at issue lies with the party opposing arbitration, *see Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). Here, the plaintiffs fail to carry their burden.

Under the FAA, "arbitration may be compelled if the following three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. § 4). Wintrust's exhibits show that McCormick and Heniff signed employment contracts containing arbitration provisions. Defs.' Mot. Exs. A–B, Dkt. 46. McCormick, who worked for Wintrust from December 1, 2010, through April 30, 2012, signed his agreement on January 10, 2012. Heniff, who worked for Wintrust from December 16, 2010, through October 16, 2012, signed his agreement on July 1, 2012. The arbitration clauses in their employment agreements provide that "any dispute between the parties concerning the wages, hours, working conditions, terms, rights, responsibilities or obligations between them or arising out of their employment relationship shall be resolved through binding arbitration." *Id.* Additionally, the contracts state that "[s]uch arbitration may not be joined with or join or include any claims by any persons not party to this Agreement." *Id.*

The parties here do not contest that McCormick and Heniff signed the contracts containing the arbitration clause, nor do they contest that their overtime and minimum wage claims would fall within its scope. The plaintiffs instead make two arguments as to why the Court should find the clauses unenforceable in this case. First, they argue that the clause is unenforceable because it purports to waive the plaintiffs' federal statutory right to proceed collectively or in this particular suit—rights the plaintiffs argue may not be waived. Next, they argue that it would be unconscionable to enforce arbitration clauses that an employer had

employees sign after being served with this very lawsuit because it would amount to those employees being asked to waive the right to participate in the collective action.

Although the Supreme Court and the Seventh Circuit have not addressed whether an employee's ability to proceed collectively under the FLSA can be waived in an arbitration agreement, numerous circuits have concluded that the FLSA does not preclude the waiver of collective action claims. *See Sutherland v. Ernst & Young LLP*, 12-304-CV, 2013 WL 4033844 (2d Cir. Aug. 9, 2013); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); *see also Vilches v. Travelers Co.*, 413 Fed. App'x 487, 494 n.4 (3d Cir. 2011) (unpublished); *Horenstein v. Mortg. Market, Inc.*, 9 Fed. App'x 618, 619 (9th Cir. 2001) (unpublished). This Court finds the reasoning underlying such a conclusion persuasive and similarly rejects the notion that a class member's inability to proceed collectively deprives them of substantive federal statutory rights available under the FLSA. As the Fifth Circuit has noted, the Supreme Court rejected similar arguments in *Gilmer*, despite the fact that the federal statute at issue in that case, the ADEA, "explicitly provides for class action suits." *Carter*, 362 F.3d at 298 (citing *Gilmer*, 500 U.S. at 32). "What is more, the provision for class actions in the ADEA is the FLSA class action provision, which the ADEA expressly adopts." *Id.* (citing 29 U.S.C. § 626(b)). In light of this weight of authority, this Court is not persuaded that enforcing this arbitration clause would amount to impermissible waiver of a federal right. Although plaintiffs who sign these agreements may as a result later lack the procedural right to proceed collectively, they nonetheless retain their substantive rights under the FLSA.

The plaintiffs argue that a collective action filed to improve the terms or conditions of employment is "concerted activity" protected by § 7 of the NLRA. *See Brady v. Nat'l Football*

*League*, 644 F.3d 661, 673 (8th Cir. 2011). They base their position on a 2012 decision by the National Labor Relations Board ("NLRB"), *In re D.R. Horton, Inc.*, 357 N.L.R.B. 184, 2012 WL 36274, *8 (2012). The NLRB held in *In re D.R. Horton* that because "concerted employment-related litigation by employees" is protected by the Norris–LaGuardia Act and the NLRA, "an arbitration agreement imposed upon individual employees as a condition of employment cannot be held to prohibit employees from pursuing an employment-related class, collective, or joint action in a Federal or State court." *Id.* The plaintiffs argue that this Court should defer to the NLRB and find that an employment contract that purports to require employees to pursue employment-related claims individually in arbitration is a *per se* violation of the NLRA.

This premise has been rejected by myriad courts. *See, e.g.*, *Richards v. Ernst & Young, LLP*, 11-17530, 2013 WL 4437601 (9th Cir. Aug. 21, 2013); *Sutherland*, 2013 WL 4033844, at *4 n.8; *Owen*, 702 F.3d at 1053; *Delock v. Securitas Sec. Servs. USA, Inc.*, 883 F. Supp. 2d 784, 789 (E.D. Ark. 2012); *LaVoice v. UBS Fin. Servs., Inc.*, 11 CIV. 2308 BSJ JLC, 2012 WL 124590, at *6 (S.D.N.Y. Jan. 13, 2012). For several reasons, the Court rejects the argument here, as well. As an initial matter, and as the Eighth Circuit pointed out in *Owen*, an arbitration clause that does not prohibit all types of concerted action is distinguishable from the clause presented in *In re D.R. Horton*. 702 F.3d at 1053–54. Here, Wintrust takes the position that the employment contract does not prohibit employees from all types of concerted action; employees may still file complaints before government agencies that may proceed on behalf of groups, such as the Department of Labor, the Equal Employment Opportunity Commission, or the NLRB. Defs.' Resp., Dkt. 65, at 7. Additionally, this Court owes no deference to the NLRB's interpretation of Supreme Court decisions, *see New York New York, LLC v. NLRB*, 313 F.3d 585, 590 (D.C. Cir. 2002), and the *In re D.R. Horton* order "conflicts with the explicit pronouncements of the

Supreme Court concerning the policies undergirding the [FAA]," *Richards*, 2013 WL 4437601, at *2; *see also Owen*, 702 F.3d at 1054 (collecting cases showing "more than two decades of pro-arbitration Supreme Court precedent"). Courts that do follow *In re D.R. Horton*, such as *Brown v. Citicorp Credit Servs., Inc.*, 1:12-CV-00062-BLW, 2013 WL 645942 (D. Idaho Feb. 21, 2013), fail to resolve this conflict and fail to account for the fact that the FAA was reenacted after the NLRA. *See Delock*, 883 F. Supp. 2d at 789 ("Congress . . . reenacted the [FAA] in 1947—after passing the Norris–LaGuardia Act and reenacting the NLRA."). Accordingly, this Court rejects the argument than an arbitration clause that waives FLSA collective litigation rights is void as a matter of law for violating the NLRA.

Turning to the plaintiffs' unconscionability argument, the Supreme Court has held that the FAA "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Concepcion*, 131 S. Ct. at 1745 (quoting 9 U.S.C. § 2). Therefore, agreements to arbitrate may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.* at 1746. The Wintrust employment contract specifies that the law of Illinois governs its construction. In Illinois, "a finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of both." *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 857 N.E.2d 250, 263 (Ill. 2006). Class-action waivers are evaluated for whether they are unconscionable on a case-by-case basis. *Id.* at 278. The Illinois Supreme Court has characterized procedural unconscionability as "impropriety during the process of forming the contract depriving a party of a meaningful choice." *Id.* at 264 (quoting *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 408 N.E.2d 403, 410 (Ill. App. Ct. 1980)). To determine if unconscionability is present, Illinois courts consider: (1) the manner of contract formation; (2)

whether each party had a reasonable chance to understand the contract; and (3) whether key terms were "hidden in a maze of fine print." *Frank's Maint. & Eng'g*, 408 N.E.2d at 410.

The plaintiffs are correct to note that unequal bargaining power alone does make an agreement unconscionable. *See Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 152, 847 N.E.2d 99, 109 (2006) (rejecting appellate court's finding that an agreement offered on a "take it or leave it" basis was unenforceable). The plaintiffs argue instead that the contractual term requiring individual arbitration of employment-related claims is unconscionable because Wintrust had its employees sign the contract after being notified of the pendency of this suit. They characterize the arbitration provision as a "release" or "waiver" of the right to consent to join this lawsuit as plaintiffs. The plaintiffs argue that the party seeking to enforce a waiver of federal statutory rights bears the burden of proving knowing and voluntary consent. *See Pierce v. Atchison Topeka & Santa Fe Ry. Co.*, 110 F.3d 431, 438 (7th Cir. 1997).

The Court first notes that Heniff signed his agreement on July 1, 2012, after this suit was filed, but McCormick signed his on January 10, 2012, two months before Wintrust was served with this suit. The plaintiffs' waiver theory thus does not apply to his arbitration clause. As for the Heniff agreement, the Court finds that it too is not accurately characterized as a waiver. The Seventh Circuit case that the plaintiffs rely on is distinguishable. *Pierce* involved a waiver of substantive rights under the Age Discrimination in Employment Act ("ADEA"). *Id.* There, an employee agreed to release all claims against his employer in exchange for a severance package. In contrast, Heniff's contract does not prohibit him from pursuing FLSA claims against Wintrust in arbitration or before a government agency. He did not waive such claims when he signed.

To the extent that the plaintiffs rely on the collective action complaint or the motion for conditional certification having been filed before July to establish that Heniff's signature

released a claim, their argument fails. The Supreme Court has indicated that even after conditional certification of a class—a step that had not yet occurred when Heniff signed his agreement—the class does not have "an independent legal status" and additional parties are not joined to the suit. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013). Heniff had no stake in this suit until he consented to opt in on October 15, 2012. When he signed his employment agreement the previous July, he had no active personal claim to release or waive. The Court recognizes the plaintiffs' concern that similarly enforceable arbitration provisions may ultimately limit the number of people that may participate in this collective action, but absent any other allegations of fraud, misfeasance, or hidden terms, it is not convinced that the provision is unenforceable for being unconscionable.

Having found the arbitration provisions enforceable, the inquiry turns to whether a dismissal or stay is appropriate. "A district court should retain jurisdiction when a suit is referred to a separate forum for resolution of an issue." *Corrigan v. Domestic Linen Supply Co., Inc.*, 12 C 0575, 2012 WL 2977262 (N.D. Ill. July 20, 2012) (citing *Tice v. American Airlines*, 288 F.3d 313, 318 (7th Cir.2002)). Section 3 of the FAA directs courts to stay proceedings that have been referred to arbitration until that arbitration has been completed. 9 U.S.C. § 3. If arbitration of the dispute does not resolve all of the issues, the suit may resume. *See Tice*, 288 F.3d at 318. The defendants motion to stay this suit as to McCormick and Heniff's claims is granted.

Finally, the defendants argue that the collective should not include those individuals who have signed arbitration clauses. As the Court noted above, the enforceability of arbitration clauses are dealt with on a case-by-case basis. Without being presented with the circumstances surrounding the manner of formation of an actual agreement, it will not pre-judge the

enforceability of other arbitration clauses. The defendants' proposal to limit the class in this way is accordingly denied.

### III.     Plaintiffs' Motion to Extend the FLSA Statute of Limitations Tolling Period

The plaintiffs also move to extend the equitable tolling of the statute of limitations for putative collective members who have not yet received notice of this action and an opportunity to opt in. FLSA prescribes a statute of limitations period of two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

FLSA claims are particularly vulnerable to the running statute of limitations because the filing of a collective action suit does not toll the statute of limitations for putative collective members. *See* 29 U.S.C. § 256(b). The Supreme Court has noted that the benefits of a FLSA opt-in collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Courts therefore often exercise their discretion to toll the FLSA limitations period when procedural delays would prejudice the claims of putative collective members. *See, e.g.*, *Bergman v. Kindred Healthcare, Inc.*, 10 C 191, 2013 WL 2632596 (N.D. Ill. June 11, 2013); *Struck v. PNC Bank N.A.*, 2:11-CV-00982, 2013 WL 1142708 (S.D. Ohio Mar. 19, 2013); *Israel Antonio-Morales v. Bimbo's Best Produce, Inc.*, CIV.A.8:5105, 2009 WL 1591172 (E.D. La. Apr. 20, 2009); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 06-0715SC, 2007 WL 707475 (N.D. Cal. Mar. 6, 2007). In light of these concerns and earlier delays in this case, and the parties' joint motion to stay the case pending mediation, this Court had previously extended the tolling of the statute to February 15, 2013. Through no fault of the existing or potential plaintiffs, there has been further delay in ruling on

the motion for conditional certification and court-authorized notice. By the date of this ruling, nearly one year will have passed since the plaintiffs filed their initial motion for conditional certification on October 19, 2012.

Wintrust makes two arguments in opposition to this motion. Wintrust argues that the absent collective action members have not diligently pursued their claims and have not been prevented from pursuing their claims by extraordinary circumstances. Additionally, Wintrust argues that this Court does not have jurisdiction to issue an order tolling the statute for absent collective action members. Wintrust's position in support of this latter argument is that because the absent collective members are not before the court, such an order would be an impermissible advisory opinion. Wintrust cites *United States v. Cook*, 795 F.2d 987, 994 (Fed. Cir. 1986), in which the Federal Circuit vacated an order purporting to toll the statute of limitations for absent collective members who had yet to receive notice as prematurely issued.

It appears that despite the widespread pattern of district courts extending tolling in similar circumstances as presented in this case, only a few have considered this particular jurisdictional argument. *See Piekarski v. Amedisys Illinois, LLC*, 12-CV-7346, 2013 WL 2357536 (N.D. Ill. May 28, 2013) (citing *Cook* and concluding that "it would be improper for the Court to toll the statute of limitations for prospective plaintiffs"); *Tidd v. Adecco USA, Inc.*, CIV.A. 07-11214-GAO, 2010 WL 996769 (D. Mass. Mar. 16, 2010) ("The plaintiffs' request for equitable tolling of the statute of limitations for potential class members is premature."). Even courts that have declined to extend the tolling of the statute of limitations implicitly suggest that they have the jurisdiction to do so when the situation warrants. *See, e.g.*, *Muhammad v. GBJ, Inc.*, CIV.A. H-10-2816, 2011 WL 863785 (S.D. Tex. Mar. 9, 2011) (indicating that the decision of whether to extend tolling was driven by the presence or absence of "extraordinary circumstances");

21

*Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 479–80 (S.D.N.Y. 2008) (considering whether counsel for the putative class presented arguments as to the potential opt-in plaintiffs' diligence). Recent Supreme Court precedent on collective actions, however, indicates a potential justiciability problem affecting this Court's ability to grant the plaintiffs' motion. *See Genesis Healthcare Corp.*, 133 S. Ct. 1523. In *Genesis*, the Court held that a collective action brought by a single employee on behalf of herself and all similarly situated employees was no longer justiciable when her individual claim became moot. *Id.* at 1529. The Court suggested that the interests of the collective are not before the court if they have not yet opted in, even once conditionally certified. *Id.* at 1530 ("'[C]onditional certification' does not produce a class with an independent legal status, or join additional parties to the action.").

The Court notes that the plaintiffs have not replied to Wintrust's brief in opposition to extending tolling, and thus have not had an opportunity to offer their perspective on this particular issue. This motion will be continued until the plaintiffs have a chance to do so. The plaintiffs have seven days after the entry of this order to reply, or until October 7, 2013.

\* \* \*

For the reasons set forth above, the plaintiffs' motion for conditional certification is granted as explained in this order. The defendants shall produce the specified employee information by October 15, 2013. The plaintiffs' proposed notice is approved; the final version shall be submitted to the Court by October 15, 2013. Defendants' motion to stay the claims of McCormick and Heniff is granted. The plaintiffs' motion to extend the tolling of the statute of limitations is continued; the plaintiffs have leave to file a reply by October 7, 2013.

Date: September 30, 2013

John J. Tharp, Jr.
United States District Judge