IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID A. SYLVESTER, | ) |
| Plaintiff, | ) |
| | ) No. 12 C 01899 |
| v. | ) |
| WINTRUST FINANCIAL CORPORATION, et al., | ) Judge John J. Tharp, Jr. |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This is an action for violations of the Fair Labor Standard Act ("FLSA") requirements that employers pay minimum wage and overtime to non-exempt employees who work more than 40 hours in a workweek. The plaintiffs are or were employed as loan originators by Wintrust Financial Corporation, Barrington Bank & Trust Company, N.A., and Wintrust Mortgage Corporation. They allege that the defendants improperly classified all of their loan originator employees as exempt from FLSA requirements based on the "outside sales" exemption, failed to pay them a minimum wage and overtime when they worked more than 40 hours in a workweek, and failed to maintain FLSA-mandated records.

Pending before the Court are two motions. The plaintiffs move for further equitable tolling of the FLSA statute of limitations and the defendants move to stay pending arbitration the claims of some 50 opt-in plaintiffs. In addition, the parties have submitted competing proposals to govern the scope of discovery given the conditional certification of the collective action. For the reasons stated below, the Court denies the motion to extend equitable tolling of the FLSA statute of limitations, grants the motion to stay as to opt-in plaintiffs who are subject to

arbitration agreements, and sets forth certain parameters to govern the scope of discovery going forward.

I. **Plaintiffs' Motion to Extend Tolling of the Statute of Limitations**

Based on the parties' agreed motion, the Court previously tolled the running of the otherwise applicable FLSA statute of limitations from December 13, 2012, to February 15, 2013.[1] *See* Dkt. 54, 57, 59, and 62. In conjunction with their motion for conditional certification of a collective action, the plaintiffs subsequently moved to extend the equitable tolling of the statute of limitations for putative collective members who had not yet received notice of this action and an opportunity to opt in. The Court denied that motion without prejudice, concluding that it could not equitably toll the running of a statute of limitations as to individuals who were not yet parties to the case.[2] Dkt. 84 (2013 WL 5433593 (N.D. Ill. Sept. 30, 2013)) ("September 30 Order"). This ruling was predicated upon the Supreme Court's opinion in *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013), in which it made clear that potential opt-in plaintiffs to a collective action are not parties to the case until such time as they actually opt-in. *Id.* at 1529.

Following conditional certification and notice to potential parties, plaintiffs' counsel reports (and the docket reflects) that more than 100 individuals have opted into this case.

---

[1] The FLSA prescribes a statute of limitations period of two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

[2] In their motion, the plaintiffs state that in its September 30 order the Court noted that "tolling of the statute of limitations is particularly appropriate where, '[t]hrough no fault of the existing or potential plaintiffs, there has been further delay in ruling on the motion for conditional certification and court-authorized notice.'" Dkt. 134, at 4. That is not accurate. Although the Court noted that there had been further delay in ruling on the conditional certification motion that was not attributable to the plaintiffs, the Court did not state that tolling of the statute of limitations was therefore "particularly appropriate." Rather, the Court held that it lacked jurisdiction to consider the tolling claims of potential opt-in plaintiffs and denied the tolling motion without prejudice. In the future, counsel should exercise greater care when characterizing the rulings of this (or any other) court.

Plaintiffs now move to further extend the period of tolling of the statute of limitations from February 15, 2013, to October 23, 2013, the date the last notice regarding the putative collective action was issued. They maintain that opt-in plaintiffs should not be prejudiced by the delay required to rule on the motion for conditional certification of the collective.[3] The defendants object to further tolling, arguing that the opt-in plaintiffs have not demonstrated that further tolling is appropriate.

As the Court observed in denying the plaintiffs' first motion to further extend the equitable tolling period beyond February 15, equitable tolling is an "extraordinary remedy," Dkt. 89, at 2, which should be granted only when claimants have exercised due diligence in preserving their legal rights. *See Wallace v. Kato*, 549 U.S. 384, 396 (2007) (equitable tolling is "a rare remedy to be applied in unusual circumstances"); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("Federal courts have typically extended equitable [tolling] relief only sparingly."); *Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013) ("Equitable tolling is an extraordinary remedy and so is rarely granted.") (internal quotation omitted). It is warranted only when the party has diligently pursued his or her rights and some extraordinary circumstance nevertheless prevented timely filing. *Id.* (citing *Holland v. Florida,* 560 U.S. 631, 649 (2010); *see also McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013).

Neither the Seventh Circuit, nor any other court of appeals (so far as the parties or this Court have been able to identify) has addressed the question of whether the delay inherent in the presentation and consideration of a motion for conditional certification of a collective action,

---

[3] The motion for conditional certification was filed on October 19, 2012 (more than seven months after filing of the complaint), and was fully briefed as of March 13, 2013. The motion was granted on September 30, 2013. As noted, a portion of the period during which briefing of the conditional certification motion was pending, to February 15, 2013, was tolled by agreement of the parties.

which is a prerequisite to the provision of notice to potential members of the putative collective, warrants equitable tolling of the FLSA statute of limitations. In support of their argument, the plaintiffs rely on Judge Hart's opinion in *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852 (N.D. Ill. 2013), and other district court opinions granting equitable tolling on the ground that a "long delay" in ruling on a conditional certification motion constitutes "an extraordinary circumstance that should not cause the opt-ins to lose out on the potential benefits of this lawsuit." *Id*. at 860–61 (citing district court opinions that have granted equitable tolling on this basis). *But see Bitner v. Wyndham Vacation Resorts, Inc.,* --- F.R.D. ---, 2014 WL 3698850, at *9 (W.D. Wis. July 25, 2014) (collecting cases granting and denying equitable tolling based on the delay necessary to rule on conditional certification motions).

This Court respectfully disagrees with Judge Hart's analysis in *Bergman*. As an initial matter, that a court may take months to rule on a fully briefed motion is (unfortunately) not extraordinary; it is, rather, the predictable and common consequence of crowded court dockets generally and the particular circumstances of any particular judge's docket specifically. Moreover, and putting aside potential differences in the complexity of such motions, clearly *some* period of time must be considered normal, rather than extraordinary, for a court to address a conditional certification motion. *Garrison v. Conagra Foods Packaged Food, LLC*, 2013 WL 1247649, at *5 (E.D. Ark. Mar. 27, 2013) ("there is nothing extraordinary about a motion for conditional certification and the delay in notice while that motion is pending"). What that period is, however, the plaintiffs do not say; they simply contend that the statute of limitations should be tolled for the entire period that a conditional certification motion is under consideration (indeed, they even seek tolling to cover a portion of the period during which briefing was proceeding). That contention is plainly not consistent with the requirement that timely filing have been

prevented by an "extraordinary circumstance." "To hold otherwise would be to opine that equitable tolling should be granted in every § 216(b) case as a matter of course during the pendency of a conditional class certification request, thereby transforming this extraordinary remedy into a routine, automatic one." *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1244 (S.D. Ala. 2008).[4]

Even assuming *arguendo* that some portion of an unusually long delay in ruling on a conditional certification motion can constitute an extraordinary circumstance, the plaintiffs must—but cannot—also establish that opt-ins were prevented from joining the law suit *by that delay*. No ruling by this Court was necessary to permit the filing of another law suit or an opt-in notice in this suit; nothing prevented any former employee of the defendants from either filing their own law suit or filing an opt-in notice for this law suit before a ruling on the conditional certification motion was issued. Judge Hart's opinion in *Bergman* states that this argument "ignores the realities of FLSA claims," 949 F. Supp. 2d at 861, but does not explain why that is so. The plaintiff in this case filed his own law suit before anyone else obtained conditional certification of a collective action, and at least five other individuals opted in to this suit before the conditional certification order was granted.[5] How the absence of a conditional certification ruling prevented other potential plaintiffs from asserting their rights, but not these five, the motion does not explain. *See, e.g., Bitner*, 2014 WL 3698850, at *10 (delay in ruling did not

---

[4] The plaintiffs offer no argument as to why a period of six months is "extraordinary." *Compare, e.g.*, *Bergman*, 949 F. Supp. 2d at 860 (delay of 2 years held to be extraordinary) *with Bitner,* --- F.R.D.---, 2014 WL 3698850, at *10 (delay of 7 months held not to be extraordinary); *Greenstein v. Meredith Corp.,* 2013 WL 4028732, at *1–2 (D. Kan. Aug. 7, 2013) (11-month delay held not to be extraordinary); *Young v. Dollar Tree Stores, Inc.*, 2013 WL 1223613 (D. Colo. Mar. 25, 2013) (10-month delay; tolling not warranted); *Vargas v. General Nutrition Centers, Inc.*, 2012 WL 5336166, at *7–9 (W.D. Pa. Oct. 26, 2012) (11-month delay from filing of motion for conditional certification did not justify equitable tolling).

[5] *See* opt-in filings at Dkt. 5, 37, 45, and 71.

prevent others from timely joining the law suit, as evidenced by opt-ins prior to issuance of notice); *Greenstein v. Meredith Corp.,* 2013 WL 4028732, at *2 (D. Kan. Aug. 7, 2013) (rejecting request for equitable tolling, in part because the "opt-in plaintiffs have had the same notice of their rights and obligations available to them as did the named plaintiff in this case").

In asserting that the delay attendant to ruling on the conditional certification motion prevented them from asserting their rights, what the plaintiffs really mean is that potential opt-ins have no way to know of the filing of the putative collective action until notice is issued. That is not entirely true,[6] but is in any event irrelevant. The question is not whether delay in issuing notice prevented others from learning about this law suit but whether such delay prevented them from discovering their own claims once those claims accrued.[7] The plaintiffs assert that those who opted in within the period permitted by the conditional certification order exercised the required diligence because they did not sit on their rights once notified of the potential claim against the defendants. But nothing in FLSA suggests that once one plaintiff has asserted a claim against an employer, all other potential plaintiffs are relieved of their respective obligations to exercise their own diligence with respect to the investigation and/or assertion of their own claims against that employer. As the defendants point out, in asking the Court to issue a blanket tolling

---

[6] This law suit is, of course, public, so other potential plaintiffs *could* learn of it, and several evidently did, but the Court takes the point: most other potential plaintiffs are unlikely to know about the law suit until they receive court-approved notice.

[7] A cause of action accrues within the meaning of § 255 "when there is a breach of duty by [the employer]," not when there has been some qualitative evaluation that there is, or may be, a viable legal claim. *Unexcelled Chemical Corp., v. United States*, 345 U.S. 59, 65 (1953). Here, that means that the plaintiffs' claims accrued when they were paid (allegedly) less than required under FLSA. *See, e.g.*, *Cook v. United States,* 855 F.2d 848, 851 (Fed. Cir. 1988) ("a claim for unpaid overtime under the FLSA accrues at the end of each pay period when it is not paid"); *Powers v. Centennial Commc'ns Corp.,* 2010 WL 746776, at *2 n.1 (N.D. Ind. Feb. 26, 2010) ("FLSA claims accrue at each regular payday"); *Nehmelman v. Penn Nat'l Gaming, Inc.,* 790 F. Supp. 2d 787, 792 (N.D. Ill. 2011) (same).

6

order, the opt-in plaintiffs effectively seek a ruling that none of them was on notice of a potential claim before they received notice of this law suit and their right to join it. The present motion provides no factual basis to support such a ruling.

Unquestionably, FLSA claims are vulnerable to the running statute of limitations but that is because Congress has not seen fit to toll the statute of limitations for putative collective members after the filing of a putative collective action. *See* 29 U.S.C. § 256(b). Congress plainly did not view the filing of a putative collective action to be an adequate reason to stop the clock on claims of other putative members of the collective, instead providing expressly that their cases "shall be considered to be commenced" on the date on which their own "written consent is filed." *Id.* Issuing a blanket order tolling the limitations period for all putative members of a collective until such time as they have been given notice of the collective action would effectively overturn Congress's view that the statute should run as to such individuals until they have filed an opt-in consent.

Accordingly, the plaintiffs' motion to further extend equitable tolling of the statute of limitations to October 23, 2013, is denied. The denial is without prejudice, however, to the claim of any individual plaintiff who may seek to invoke equitable tolling based on his or her own particular circumstances rather than on the delay necessary to rule on the conditional certification motion.

## II. Defendants' Motion to Stay Pending Arbitration

In the September 30 Order, the Court also granted the defendants' motion to compel arbitration as to two of the opt-in plaintiffs who had filed consents to join the suit. The defendants now seek to stay the claims of another 50 opt-in plaintiffs (out of approximately 119, in total) who, they assert, "are parties to written employment agreements with Wintrust that

contain valid and enforceable agreements to arbitrate the claims brought in this lawsuit." The defendants maintain that the agreements should be enforced for the same reasons that the Court granted their first motion to compel.

The plaintiffs do not contest that they signed the contracts containing agreements to arbitrate, nor do they contest that the overtime and minimum wage claims they assert in this case fall within the scope of those agreements. They argue instead that "Wintrust's practice of having its employees sign arbitration clauses purporting to waive the right to participate in collective actions after being served with the present collective action is unconscionable." Dkt. 149, at 2. They also maintain that "the right to proceed collectively cannot be waived, [so] the arbitration clause cannot be enforced." *Id*.

These are the very same arguments that the plaintiffs advanced in opposition to the defendants' first motion to compel arbitration. *See* Dkt. 53; September 30 Order at 14–15. The plaintiffs assert at the outset of their response to the defendants' motion that the arguments "assert newly developed facts," but the only new facts set forth are that the defendants have secured arbitration agreements with another 50 opt-ins. The plaintiffs point out as well that there are three different versions of the arbitration agreement, but the differences between those agreements (which relate principally to whether they permit or preclude collective or joint arbitration proceedings) are not material to their enforceability. The plaintiffs already asserted, and the Court rejected, the argument that employment agreements waiving any right to pursue a claim collectively that were signed after the plaintiff initiated this putative collective action are unconscionable.[8] Those agreements waived no substantive right under FLSA and, as the

---

[8] Only 20 of the 50-plus waivers were signed after this lawsuit had been filed. Thus, even if the unconscionability argument had merit, it would exempt from arbitration only those 20 opt-in plaintiffs.

Supreme Court's opinion in *Genesis Healthcare* teaches, even conditional certification of the putative collective "does not produce a class with an independent legal status, or join additional parties to the action." 133 S. Ct. at 1530. Thus, individuals who had not opted into the suit had no rights deriving from the suit's existence when they signed the arbitration agreement. *See* September 30 Order at 17–19. The plaintiffs' attempt to analogize to situations in which courts have barred defendants from contacting members of a putative *class* are for that reason simply inapposite; unlike putative class members, who are not required to opt into a class action, potential members of a collective have no legal rights with respect to the putative collective action until they have opted to join it.

Further, and as the Court observed in the September 30 Order, numerous circuit courts (and district courts) have rejected the argument that arbitration agreements that waive class or collective action waivers are unenforceable because such proceedings constitute "concerted activity" that is protected under violate Section 7 of the NLRA. And further, after the Court issued the September 30 Order, the principal ruling on which the plaintiffs relied, the NLRB's decision in *In re D.R. Horton*, 357 N.L.R.B. 184, 2012 WL 36274 (2012), was reversed by the Fifth Circuit, which held that "the NLRA does not contain a congressional command exempting the statute from application of the FAA," and that waiver of the right to arbitrate collectively is permissible under the FAA. *See D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 362 (5th Cir. 2013). The plaintiffs acknowledge that the tide against them on this issue has strengthened yet provide no reason to throw them a lifeline.

The plaintiffs' opposition to enforcement of the arbitration agreements raises no other arguments. Accordingly, the defendants' motion to stay is granted. The claims of the individuals

who are subject to those agreements and who have opted into this case (listed at pages 2–4 of the defendants' motion, Dkt. 145) are therefore stayed pending arbitration.

### III. Scope of Discovery

Notwithstanding their ostensible dispute about the scope of discovery, the parties appear to agree that discovery should go forward on a representational basis; the debate about the scope of discovery concerns what fraction of the collective should be deemed to be representative. While the defendants observe that they should be able to depose all 61 members of the collective whose claims are going forward, they seek only to depose 20 members (about one third of the collective) at present. The plaintiffs, by contrast, contend that depositions should be limited to 10 percent of the members—that is to say, six.

Particularly in light of the effect of the ruling on the defendants' arbitration motion on the size of this case (reducing the size of the collective by almost half), and the relatively small size of the collective in any event, the Court's view is that discovery should extend to a more significant portion of the collective than the 10–20 percent advocated by the plaintiffs. As the authorities cited by the defendants observe, with a smaller pool, it is necessary to test a larger sample to avoid anomalous results. In this regard, the defendants' request to issue document requests (but not interrogatories) to each of the members of the collective, and to depose up to 20 members of the collective, is reasonable. Further, the selection of the deponents will be left to the defendants' discretion, since the plaintiffs presumably have the ability to obtain information necessary to further support certification of the collective from any of the opt-in plaintiffs. If the plaintiffs wish to depose additional members of the collective, they may do so without limitation.

Any further details with respect to the scope of discovery will be addressed at the next status hearing.

\*   \*   \*

For the reasons set forth above, the plaintiffs' motion to further extend equitable tolling of the FLSA statute of limitations is denied and the defendants' motion to stay pending arbitration the claims of opt-in plaintiffs who are subject to arbitration agreements is granted.

Date: September 26, 2014

John J. Tharp, Jr.
United States District Judge